## McKeen *v.* A. T. Bowen & Company et al.

[No. 21,710. Filed October 29, 1914.]

1. APPEAL.—*Review.—Findings.—Province* of *Trial Court.*—The trial court alone has power to weigh the evidence and determine the facts, and to reconcile or disregard conflicting statements of any witness, and it is only where there is an entire absence of evidence to support the finding that the court on appeal may disturb it on the evidence. p. 341.

2. APPEAL.—*Presentation of Questions for Review.—Necessity.*— No question is presented on appeal as to the competency of a witness to testify, where the question was not presented to the lower court. p. 341.

3. BILLS AND NOTES.—*Relation of Parties.—Evidence.—Sufficiency.* —In an action on a promissory note executed in the name of a corporation and bearing the endorsements of a number of persons, the testimony of a witness to the effect that one of the defendants whose name was endorsed thereon, and who was held as a principal instead of endorser, in consideration of the purchase of preferred stock of the corporation, which was then being organized, and which stock was delivered to him, agreed to pay the debt evidenced by the note in suit, was sufficient, if believed, to authorize the trial court to find against such defendant on the theory that he was a principal. p. 342.

From Madison Circuit Court, *H. Clarence Austill,* Judge.

Action by A. T. Bowen & Company against The Muncie Gas Light and Fuel Company and others. From the judgment rendered, the defendant, William Riley McKeen, appeals. *Affirmed.*

*John G. Williams,* for appellant.

*William C. Smith, Byron W. Langdon, Boyd & Julian* and *Chipman & Hendee,* for appellees.

Morris, J.—Suit to recover on a promissory note for $10,000, dated April 5, 1906, payable to A. T. Bowen & Company plaintiffs, purporting to have been executed by The Muncie Gas Light and Fuel Company and endorsed by Charles E. Ruger, Robert H. Adams, W. R. McKeen, Charles A. Meeker, J. F. Marks, N. W. Box and Hiram Kerlin. The original defendants were The Muncie Gas Light and Fuel Company, Ruger as receiver of The Muncie Gas Light and Fuel Company, and the above mentioned endorsers except Kerlin, who had died, and whose executor was made a party defendant. Before the issues were closed Marks and Meeker died and the administrators of their estates were made defendants, and after trial, but before finding, upon the suggestion of the death of Robert H. Adams, the administrator of his estate was substituted as defendant. Before trial the case was dismissed as to Ruger, as receiver of The Muncie Gas Light and Fuel Company.

As the result of numerous pleadings the issues that were formed and tried were as follows: (a) As between the plaintiffs and the defendants there were general denials of all of the allegations of the complaint, answers of no consideration for the note sued on, and a denial under oath by The Muncie Gas Light and Fuel Company of its execution; (b) issues of suretyship arising upon the cross-complaint of McKeen setting up that he was surety for all his codefendants; (c) issues of suretyship presented by the cross-complaint of Kerlin, executor, setting up that his decedent, Hiram Kerlin, was surety for all the other endorsers on the

note, and that McKeen had agreed to pay the note in suit; (d) issues of suretyship arising upon the several cross-complaints against McKeen, of Marks' administrator, Meeker's administrator, Box, and Adams, wherein it was claimed by each of those parties that McKeen should be adjudged principal because, for a valuable consideration, he had agreed to pay the note sued on, and, in behalf of Marks' administrator, that McKeen should be adjudged principal because he had agreed with Marks to protect him against liability for loss on account of his endorsement of the note sued on. The case was tried by the court, without a jury, and the issues were decided in favor of the plaintiffs against all of the defendants, and against McKeen on the cross-complaints of his several codefendants, and in favor of Kerlin, executor, on his cross-complaint. Judgment was rendered in favor of the plaintiffs against all the defendants, and it was adjudged that execution should be levied against the property of the defendants in the following order: first, Wm. R. McKeen; second, The Muncie Gas Light and Fuel Company; third, the remaining defendants other than Kerlin's executor; fourth, Kerlin's executor.

McKeen's motion for a new trial was overruled, and he alone appealed. The only error assigned is the ruling on said motion, which was grounded on the insufficiency, in law and fact, of the support of the decision by the evidence. No question is presented in relation to the form of the judgment against the personal representatives, and no cross errors are assigned.

In 1902, The Muncie Natural Gas Company, a corporation, was engaged in furnishing natural gas to the citizens of Muncie, and its capital stock was owned by Theodore F. Rose and Abbot H. Johnson. The Muncie Gas Company was a corporation theretofore engaged in furnishing artificial gas in the same city. The Wabash Oil and Gas Company, a corporation, owned oil and gas leases in Delaware County and supplied natural gas to the manufacturing plant

of Ball Brothers at Muncie, and Charles A. Meeker, Jacob
F. Marks, Nicholas W. Box, and Fred Murdock, of Lafay-
ette, and Hiram Kerlin, of Delphi, were directors of said
company, and were liable for its indebtedness, in the sum
of $20,000. Meeker was vice president of the company, and
was a corporation promoter. Robert H. Adams was an in-
surance agent residing in Indianapolis. William R. McKeen
was a member of the private banking house of McKeen &
Co., at Terre Haute. N. W. Harris & Co. were bond brokers
with offices in Chicago, Boston and New York.

The Wabash Oil and Gas Company was endeavoring to
raise $20,000 by sale or pledge of its bonds, and employed
Adams, on a commission contract, in such effort. Adams
consulted McKeen about the matter and was referred to
N. W. Harris & Company, but that firm refused to handle
a bond sale for so small an amount. It was then reported
that the plant of the Muncie Natural Gas Company could be
purchased for about $500,000 cash, that of the Wabash Oil
and Gas Company for $100,000, and that of the Muncie Gas
Company for $10,000. Adams, Meeker and N. W. Harris
& Co. thereupon formed a plan to organize a new company,
with a capital of $1,000,000 divided in 4,000 shares of the
preferred stock and 6,000 shares of common, with shares of
each of the par value of $100. It was not the purpose to pay
in any of the capital, but it was intended that the properties
of the three existing corporations should be acquired by the
new one, and part payment for the purchase should be made
by the sale of mortgage bonds of the new company, in the
sum of $250,000, which N. W. Harris & Co. agreed to take
at 92 cents on the dollar. When it came to closing the deal,
it was found that $540,000 must be paid for the property of
the Muncie Natural Gas Company on the following terms:
$50,000 cash, $200,000 in about 30 days, $100,000 in about
three months, and $190,000 in about five months; also, that
no transfer would be made until $250,000 should have been
paid. Thereupon the directors of the Wabash company

agreed to accept for the property of that company $20,000 in cash, $30,000 in three notes of $10,000 each, maturing in six months, and 1,200 shares of common stock in the new company, and also agreed to raise $50,000 for the new company to make its cash payment to the Muncie Natural Gas Company. Accordingly two notes for $25,000 each, dated January 17, 1903, were signed by Adams, payable to Meeker and were endorsed by the directors of the Wabash company. These notes were discounted by McKeen & Co. January 20, 1903. Afterwards, on January 22, 1903, a contract was executed by which the Muncie Natural Gas Company agreed to transfer all its property to Adams and Meeker, on the terms heretofore stated, and the $50,000 realized from the discount of the notes was paid on the execution of the contract. On January 26, 1903, the new company was incorporated under the name of The Muncie Gas Light and Fuel Company. Meeker was elected president, Adams secretary and Frank McKeen, son of Wm. R. McKeen, treasurer, and, on January 27, 1903, at a stockholders' meeting, Adams and Meeker proposed that if the company would execute and deliver to them, or to such person as they might, in writing, designate, $250,000 of first mortgage bonds of the company, and the 4,000 shares of the preferred stock of the company, and 5,993 of the 6,000 shares of its common stock, they would procure for the company all the property of the Wabash company, the Muncie Gas Company and the Muncie Natural Gas Company. The proposition was accepted, and the officers of the company were directed to take the necessary steps to carry the agreement into effect.

Pursuant to the agreement, preferred and common stock certificates were issued in the name of Meeker, and by him endorsed in blank, and these were delivered to the Muncie Natural Gas Company as collateral, to secure the payment of a note for $100,000, and another for $190,000, due respectively May 1, and July 1, 1903, executed by Adams and

Meeker and endorsed by the new company. Of the $230,000 realized from the sale of mortgage bonds, $200,000 was paid to the Muncie Natural Gas Company, $10,000 to the Muncie Gas Company, and $20,000 to the Wabash Oil and Gas Company. Three notes of $10,000 each payable to Box, treasurer of said company, were executed February 9, 1903, due six months after date. These notes were negotiated in a short time, and one of them was discounted by E. W. Bowen & Co., bankers, after being endorsed by some of the directors of the Wabash company. When this note became due, in August, 1903, it was paid from the proceeds of a note to A. T. Bowen & Company, plaintiffs in this action, executed by The Muncie Gas Light and Fuel Company, and endorsed by Meeker, Adams, Charles E. Ruger, N. W. Box, J. F. Marks, Fred Murdock and Hiram Kerlin. This note was renewed in 1904, by the maker and endorsers, and this renewal note was paid April 5, 1906, by the execution of the note in suit, signed by The Muncie Gas Light and Fuel Company and endorsed by the same persons as was the previous one except that the name of W. R. McKeen appears thereon instead of that of Fred Murdock, who, in the meantime, had died. There is no controversy relating to the right of A. T. Bowen & Co. to the judgment rendered in their favor. The principal ground of contention relates to the decision of the trial court that appellant McKeen was primarily liable for the payment of the debt. This decision rests almost entirely on the evidence given by said Robert H. Adams during an oral examination lasting five days. He testified among other things, in substance, that on January 20, 1903, Meeker and he were at the McKeen bank at Terre Haute and explained to appellant the details of their plan, and told him that the men who were executing the two $25,000 notes were not to pay them, but the same were to be paid from the proceeds of sale of preferred stock; that it was also stated that the persons signing these notes were to receive a certain number of shares of common stock; that McKeen suggested that he

ought to receive some of the common stock for furnishing the $50,000, even though, as represented, the signers of the notes were amply solvent; that Adams and Meeker thereupon agreed that McKeen should have 1,000 shares of the common stock in consideration of the loan and services, and they signed a memorandum to that effect; that it was also stated that Adams and Meeker would each keep $100,000 of the common stock, making $300,000 par value thereof to be owned by McKeen, Adams and Meeker; that in March, 1903, Adams told appellant that he was fearful that the agreed time for the payment of the notes to the Muncie Natural Gas Company was too short—that the $100,000 note would fall due May 1, and that it would be necessary to make arrangements for the sale of some preferred stock to meet the payment, and appellant looked over the statement of the earnings of the Muncie Natural Gas Company for January, 1903, and suggested that it might be well to wait and see what the earnings of the new company would be; that on May 19, 1903, Adams and Meeker had an interview with appellant at Terrè Haute and informed him that they were offered 83 cents on the dollar for preferred stock by a Cleveland firm, and appellant told them that the preferred stock was worth more than that, and he proposed to take it all in consideration of paying $370,000 of the purchase price debts, composed of the following items: the two notes to the Muncie Natural Gas Company for $100,000 and $190,000 respectively, the two $25,000 notes held by the McKeen bank, and endorsed by the Wabash company directors, to raise the $50,000 cash payment for the plant, and the debts represented by the three $10,000 notes executed to the Wabash. company; at the same time appellant informed them that he was engaged in private banking business, and did not want it known that he was purchasing this preferred stock; that the proposition was accepted by Meeker and Adams; that previously, about May 1, 1903, in order to prevent suit, about $10,000 was paid on the $100,000 note, from the cash

receipts of the new company; that subsequently, on May 27, 1903, the parties met at Muncie, and the balance due on the $100,000 note, which had matured on May 1, was paid in the following manner: Mr. McKeen gave Rose, representing the Muncie Natural Gas Company, two drafts for $25,000 each; $20,000, on deposit in a bank represented by Rose was withdrawn and applied in part payment, after Meeker, Adams and McKeen had executed an indemnifying bond to Rose; a note for the balance, about $21,000 or $22,000, including interest, was executed to Rose by Meeker and Adams and endorsed by McKeen; that the $100,000 note was then marked "paid May 27, 1903", and delivered to McKeen, and a portion of the preferred stock, theretofore held by Rose representing the Muncie Natural Gas Company, as collateral, was turned over to McKeen, pursuant to the agreement of May 19; on the same day Rose surrendered 3,001 shares of common stock and a certificate for the same was executed to McKeen, who put it in Mr. Rose's hands as collateral for the $190,000 note due July 1, 1903; that two or three days after, two notes for $25,000 each, purporting to be executed by the Muncie Gas Light and Fuel Company, payable to Meeker and endorsed by Meeker and Adams, dated May 27, 1903, were delivered to McKeen; that these notes were given as an accommodation to McKeen, to provide him with live paper, on which he could raise money by his own endorsement notwithstanding Meeker and Adams owned very little property; that subsequently payments were made on the $190,000 note, by McKeen, and when payments were made preferred stock was surrendered by Rose, and delivered directly, or indirectly, to McKeen; that whenever any payment was made by McKeen, on the indebtedness to the Muncie Natural Gas Company he took notes executed or endorsed by Meeker and Adams, in amounts equalling the payments; that these notes were all accommodation notes to supply McKeen with "live paper" and were not to be paid by the makers or endorsers; that at McKeen's request,

his ownership of preferred stock was kept secret until after the bringing of this suit; that a short time before the last renewal of the note in suit, Adams informed McKeen that Marks and Kerlin were objecting to signing any renewal, and McKeen said ''you tell Mr. Kerlin and Captain Marks that there will be no trouble about that note; I will endorse it with them, and it will be taken care of, as that is one of the original notes on the purchase price of the Wabash Oil and Gas Company.''

Counsel for appellant vigorously assails the testimony of Adams and claims that it does not support the finding of the trial court that appellant ever agreed to purchase the preferred stock, and suggests not only the improbability of the truth of Adams' story but points out that many statements in his cross-examination are in apparent conflict with those made on direct examination. Our attention is urged to the fact that no written memorandum corroborates Adams' testimony, but that on the other hand every writing admitted in evidence is in accord with the theory that no such agreement was made. The trial court alone had the power to weigh the evidence and determine the facts from the evidence adduced and to reconcile or disregard conflicting statements of any witness. *Peabody-Alwert Coal Co.* v. *Yandell* (1913), 179 Ind. 222, 100 N. E. 758. In cases of this character no power has ever been conferred on our courts of review to determine the facts, and interference with the finding below must be predicated on an entire absence of evidence to support it. We cannot say that the truth of Adams' story is impossible, and even were we to concede the extreme improbability of its truth that is claimed by appellant's counsel, we would yet be without rightful power to set aside the finding. Mr. McKeen was not offered as a witness to refute the evidence of Adams.

Indeed, he was not present at the trial. There is some controversy between counsel as to the competency of appellant to testify, because Marks, Meeker and Kerlin, who

signed the note sued on, died before the time of trial. We do not consider the matter because the record presents no question regarding his competency as a witness.

Appellant's counsel contends that, conceding that appellant agreed in 1903 to pay the debt evidenced by the note in suit, in consideration of the transfer to him of the preferred stock, the evidence must be held as proving that such agreement was afterwards rescinded. We do not deem it necessary to set out the items of evidence which appellant's counsel claims supports this proposition. What we have said in relation to the proof of the agreement is equally applicable here. Adams testified that on May 27, 1903, when McKeen delivered drafts in part payment of the $100,000 note, some of the preferred stock was delivered to him in pursuance of the agreement. Evidently the trial court believed this statement and believed Adams' explanation of the reasons for the execution of the notes given by Adams and Meeker for the sums paid by McKeen. However improbable the truth of this explanation may appear to appellant's counsel or might appear to this court, it seems to have convinced the trial court of its truthfulness, and we are precluded from interfering with the finding. Inasmuch as there was some evidence to support the finding by the trial court of facts which justified the conclusion that appellant was primarily liable for the payment of the note, it is unnecessary to consider other questions presented by appellant's counsel.

The death of appellant is suggested and the judgment is affirmed as of the date of submission.

NOTE.—Reported in 106 N. E. 529. See, also, under (1) 3 Cyc. 360; (2) 2 Cyc. 698.